IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHNNIE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:02-CV-3459-TMP |
| | ) | |
| BORAL BRICKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This action is before the court on defendant Boral Bricks, Inc.'s, motion for summary judgment, supported by a brief and evidence, filed November 28, 2005. Plaintiff Johnnie Harris responded to the motion by filing a brief in opposition.[1] The defendant filed a reply brief, supported by additional evidence. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

**I.  SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

---

[1] Plaintiff has not offered any evidence in opposition to the motion, except to cite to a few pages of plaintiff's deposition, which were submitted by defendant.

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. UNDISPUTED FACTS

Plaintiff Johnnie Harris brings this action against Defendant Boral Bricks, Inc. ("Boral"), his current employer, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. For purposes of the instant motion for summary judgment, the following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving plaintiff.

Harris became employed by Boral, formerly known as Bickerstaff Bricks, in 1992. Harris initially was trained and worked as a strapping machine operator in the Packaging Department. He worked the night shift for three years before moving to the day shift in an auxiliary swing position in the same department. In January 2002, plaintiff transferred to a shapes cutter position in the newly created Shapes Department, where he made special-order bricks. Initially, Harris worked with Kina Steele (female) and Tipalias Hamilton (male) in the Shapes Department. Eventually, Larry Bowden (male) was added to the Shapes Department, but Bowden was soon replaced by Robert Moore (male). In addition to their duties in the Shapes Department, all members of the department performed work in other departments on an as-needed basis.

The terms and conditions of Harris's employment are governed by a collective bargaining agreement (CBA). The CBA gives the "management of the plant the right to classify, transfer, promote and retire employees, the right to assign employees to jobs and to transfer employees from one job to another permanently or temporarily." The provision also gives management the right to make "the determination of whether the plant or any department or part thereof is to be closed temporarily or permanently," and further provides that "the determination of ability, qualifications,

and capabilities of employees, the number and the times of shifts ... are all vested solely and exclusively in [Boral]." Article II, Management Rights, of the CBA. The list of management rights retained by Boral is non-exclusive, and "the only restrictions or limitations upon the rights and functions of [Boral] are those which are specifically and expressly set forth in th[e] [CBA]."

The CBA also provides that "when the employee work force is increased or reduced or when promotions or openings for jobs are made ... the ability to perform the work and length of continuous service" shall be considered. Article VIII, Seniority, of the CBA. Article VIII further clarifies the relationship of the factors by stating that "[w]hen, in the opinion of the Company, [the ability to perform the work] is relatively equal among employees, length of continuous service shall then be the determining factor."

In late 2003, Boral management temporarily slowed production in the Shapes Department in order to evaluate the market for special-order bricks. Harris was told that the Shapes Department was being closed. As a result of the slow-down, employees of the Shapes Department were assigned to other departments in January 2004. Harris admits there were no posted jobs for which he could apply at that time. Harris, Hamilton, and Moore (all male) were assigned to the Packaging Department. Harris and Moore, both of whom had previously worked as strapping machine operators, were assigned to that position. Hamilton, who lacked experience as a strapping machine operator, was assigned to the auxiliary swing position. Steele, who also lacked strapping machine

experience, was assigned to the sweeper operator position.[2]  After she began her duties as sweeper operator, Steele also continued to perform tasks in the Shapes Department.

After Harris was transferred back to work as a strapping machine operator in January 2004, he was paid at a higher rate than he had been paid as a shapes cutter.  His work hours also changed.  While working as a shapes cutter, Harris worked from 6:00 a.m. to 2:30 p.m. Monday through Friday.  As strapping machine operator, Harris worked 6:00 a.m. until 6:00 p.m. (and sometimes later) two days a week, followed by a half-day shift, and then had three and a half days off.

Harris was not satisfied with his assignment as strapping machine operator, but was told that it was the only position available to him.  Boral's management told Harris that he had been assigned to the strapping machine operator position because of his previous experience, good performance in that position, and because Boral needed someone to operate the strapping machine.  During this time there were no posted jobs that Harris would have been eligible for under the CBA provisions.  After Harris expressed his dissatisfaction with the transfer, Harris was offered a sweeper operator position, identical to Steele's position, but he declined to accept it.

In June 2004, six months after the job reassignments took place, Boral concluded its evaluation of the Shapes Department and chose to continue Shapes production as a one-person operation.  Harris was offered the sole shapes-cutter position and accepted it. Boral informed Harris

---

[2]     Harris maintains that Steele was not assigned to the sweeper operator position until after the other employees were transferred out, and that she continued to work in the Shapes Department as the sole employee.  Harris' knowledge of the timing of Steele's reassignment, however, is mere hearsay, and even the deposition excerpt cited by plaintiff indicates that Steele, at the relevant times, was performing both the sweeper tasks and the shapes tasks.  Furthermore, Boral has explained that the nature of the sweeper job allowed more freedom for Steele to perform other tasks than did the strapping machine operation job.

that as part of the position he would routinely be assigned to perform work outside the Shapes Department.

Based upon the six months during which Harris was transferred from the shapes-cutter to strapping machine operator, Harris filed a charge of sex discrimination against Boral with the Equal Employment Opportunity Commission ("EEOC") on June 4, 2004. The EEOC issued Harris a right-to-sue letter on September 20, 2004.

### III. DISCUSSION

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." In order to establish a *prima facie* case of discrimination, a plaintiff may: (1) present direct evidence of discriminatory intent; (2) establish circumstantial evidence of discrimination; or (3) demonstrate a pattern of discrimination through statistics. In this case, Harris has not produced any direct evidence of discriminatory intent, nor has he produced any statistical evidence of a pattern of discriminatory intent. Accordingly, Harris must rely on circumstantial evidence and must invoke the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to establish his discrimination claim. See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).

Under the McDonnell Douglas framework, a plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802. To establish a *prima facie* case of discrimination the plaintiff must show: (1) he was a member of a protected class; (2)

he was qualified for the position; (3) he suffered an adverse employment action; and, (4) he was replaced by someone not a member of his protected class or was treated less favorably than others similarly situated to him. See Maynard v. Board of Regents of Div. of Univ. of Fla., 342 F.3d 1281, 1289 (11th Cir. 2001). "Although a plaintiff's burden in proving a *prima facie* case is light, summary judgment is appropriate against the plaintiff if he fails to satisfy any one of the elements of a prima facie case." Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998), cert. denied, 525 U.S. 962 (1998). However, if a plaintiff shows a *prima facie* case of discrimination, a rebuttable presumption of discrimination is created and the defendant must articulate legitimate, non-discriminatory reasons for the employment decision. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). "Should the employer meet its burden of production, the presumption of discrimination is rebutted," and the plaintiff must show that the proffered reason is a pretext for unlawful discrimination. E.E.O.C. v. Joe's Stone Crabs, Inc. 296 F.3d 1265, 1272-73 (11th Cir. 2002).

The parties do not dispute that Harris is a male and was qualified to work as a shapes cutter in the Shapes Department. However, Harris has failed to establish that he suffered an adverse employment action by being transferred to the strapping machine operator's position, and he also has failed to show that a similarly qualified female received preferential treatment. Accordingly, the third and fourth elements of the *prima facie* case have not been met.

### A. Adverse Employment Action

The Eleventh Circuit has adopted an objective test for determining whether an employment action is "adverse." Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1449 (11th Cir. 1998). A

"plaintiff must prove that a reasonable person in his position would view the employment action in question as adverse." Id. "[N]ot everything that makes an employee unhappy is an actionable adverse action," otherwise "every trivial personnel action would form the basis of a discrimination suit." Id. The protection afforded by Title VII "extends to adverse employment actions which fall short of ultimate decisions." Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453 (11th Cir. 1998). Therefore, "actions such as ... demotions, [and] disadvantageous transfers ... are actionable." Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1283 (11th Cir. 1999); see also Doe v. Dekalb County, 145 F.3d at 1446 (a "transfer may sometimes constitute an adverse action"). Nevertheless, "[a]ny adversity must be material; it is not enough that a transfer imposes some *de minimis* inconvenience or alteration of responsibilities." 145 F.3d at 1453. See, *e.g.,* Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1375 (11th Cir. 1988) (plaintiff's alleged demotion to position of plant guard, which resulted in no reduction in pay or loss of benefits, could not support Title VII action). Thus, in order to show an adverse employment action, a plaintiff must establish that the action caused "a serious and material change in terms, conditions, or privileges of employment." Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001). Furthermore, the Eleventh Circuit has noted that for employment actions short of ultimate decisions "there is some threshold level of substantiality that must be met for unlawful discrimination to be cognizable." Wideman, 141 F.3d at 1456.

The Plaintiff argues that the transfer from the shapes-cutting position to the strapping machine operator position was an adverse employment action because he was denied his right to replace Steele by virtue of his seniority. First, the CBA explicitly grants Boral the sole and exclusive

right to transfer employees from one job to another without regard to the employee's seniority. Next, even if this Court were to assume that the temporary reassignment of the Shapes Department employees could be characterized as a reduction in work force rather than a temporary reassignment and that there was a job opening in the Shapes Department, the CBA would not provide Harris with the right to replace Steele. Article VIII provides the criteria for job placements when the work force is reduced and when job openings occur. None of the members of the Shapes Department was fired; all were temporarily reassigned to other departments; and no job openings were available to Harris. However, even if the criteria of Article VIII applied to the reassignment of the Shapes Department, Boral retained the ability to first determine and consider the job candidates' ability to perform the work. Only after the candidates' abilities are deemed equal, in the opinion of Boral, does the seniority of the candidates become the determining factor. In determining where Shapes Department employees would be reassigned, Boral considered the ability of all the employees. Both Harris and Moore were assigned to positions where they had previous experience, and Steele and Hamilton were assigned to positions (lesser-paying than strapping machine operator position) which, though they lacked previous experience at these positions, did not require further training. Finally, Harris was given the opportunity to take a position as sweeper operator, working as-needed in the Shapes Department, with the same Monday-Friday day shift work schedule, but chose not to accept that position. Plaintiff's argument, at its core, is that once Boral had given him the shapes-cutter position, it could never change his assignment or his work schedule. Title VII does not grant employees that type of power. The plaintiff's temporary reassignment to the higher-paying strapping

machine operator position simply does not violate Title VII and cannot be deemed an adverse employment action.

The plaintiff argues that the transfer from the shapes cutting position to the strapping machine operator position was an adverse employment action because his work hours were changed. As shapes cutter, Harris was scheduled to work eight hours a day for five days a week.  After the transfer, Harris worked eleven and one half hours three days a week and a half day one day a week. The Eleventh Circuit Court of Appeals has not specifically addressed whether a change in hours, while salary and duties remain the same, constitutes an adverse employment action.  Other circuits have addressed the issue and have held that changes in working hours are not actionable in employment discrimination suits.  See, e.g., Grube v. Lau Industries, Inc., 257 F.3d 723 (7th Cir. 2001)("Title VII simply was never intended to be used as a vehicle for an employee to complain about the hours she is scheduled to work .... [An employer's] decision to change an [employee's] working hours certainly does not rise to the level of an adverse employment action."); Baucom v. Holiday Companies, 428 F.3d 764, 768 (8th Cir. 2005)(slight decrease in hours is not materially significant, especially when hours consistently remain at full-time level); Washington v. Illinois Dept. of Revenue, 420 F.3d 658 (7th Cir. 2005)("change in hours normally would not be material"); Kocsis v. Multi-Care Mgmt., 97 F.3d 876, 886-87 (6th Cir. 1996)("a mere shift transfer does not amount to an adverse employment action"); Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 723, 728 (5th Cir. 2001)(shift change, without more, is not an adverse employment action); Benningfield v. City of Houston, 157 F.3d 369, 377 (5th Cir. 1998), cert. denied, 526 U.S. 1065 ("Merely changing [the plaintiff's] hours, without more, does not constitute an adverse employment action."); Mormol

v. Costco Wholesale Corp., 364 F.3d 54, 58 (2nd Cir. 2004) ("[change in hours] does not rise to the level of a significant change in employment status"); Savino v. C.P. Hall Co., 199 F.3d 925, 932 n. 8 (7th Cir. 1999)("a tangible employment action has to cause a substantial detriment to the plaintiffs employment relationship").

In this case, Harris was reassigned to a different position and scheduled to work a different schedule. As a result of his assignment to strapping machine operator, his pay rate *increased*. Regardless of the plaintiff's belief about the "closing" of the Shapes Department, the reassignment proved to be temporary. When a full-time position in the Shapes Department became available six months later, plaintiff was given the job. Employment actions that fall short of ultimate decisions must meet some level of substantiality. Having to work different hours for less than six months, while benefitting from an increased pay rate, does not meet this "threshold level of substantiality." *Wideman*, 141 F.3d at 1456. The court concludes that, as a matter of law, Harris's transfer from shapes-cutter to strapping machine operator is not actionable, and no reasonable person in Harris's position would view the employment action in question as adverse. See Doe v. Dekalb County, 145 F.3d at 1449.

### B. Disparate Treatment

Defendant is entitled to summary judgment in its favor for an additional reason. As part of the Title VII *prima facie* case, the plaintiff must show that his employer treated similarly situated employees outside his classification more favorably than himself. Coutu v. Martin Cty. Bd. of Cty. Commissioners, 47 F.3d 1068, 1073 (11th Cir. 1995).

Harris points to Steele as a similarly situated employee who was treated more favorably. Steele continued to perform duties in the Shapes Department, and was reassigned to the sweeper operator position during the slow-down period. While it is clear that Harris found Steele's duties and/or hours more desirable, the court has no evidence from which to conclude that Steele was treated more favorably. To the contrary, the evidence indicates that Steele received less favorable treatment because she was not offered the higher-paying position as a strapping machine operator.[3] Moreover, because Harris was offered the sweeper operator position but declined, he cannot claim that Steele was treated more favorably by virtue of her assignment to that position.

Finally, Steele did not work in the Shapes Department at the exclusion of male employees. Rather, at least two males other than plaintiff worked in the Shapes Department during the review period. Harris has admitted that he has no evidence whatsoever that gender played any role in the employment decision of which he now complains. It is clear from the evidence presented by the defendant that Harris was simply unhappy that Boral chose to temporarily assign him to duties he didn't like and hours he subjectively found less desirable. Because a female employee received a temporary assignment that he subjectively found more desirable, he seeks to blame his discontent on gender discrimination.

---

[3] The court further finds that, even if plaintiff were able to prove a *prima facie* case of sex discrimination, the defendant's motion still would be due to be granted because Boral has demonstrated that the reassignments were based upon the qualifications of the employees and the company's rights under the CBA. Plaintiff had experience working as a strapping machine operator; Steele did not. In other words, Boral has demonstrated a non-discriminatory reason for the temporary reassignments, and plaintiff has failed to demonstrate that those reasons are pretextual.

## IV. CONCLUSION

For the foregoing reasons, this Court concludes that there exists no genuine issue as to any material fact and that Boral is entitled to summary judgment on Harris's Title VII claim as a matter of law.  Harris has failed to demonstrate that his transfer from shapes cutter to strapping machine operator was an adverse employment action, and he has failed to demonstrate that he was treated less favorably than similarly situated females.  The motion for summary judgment will be granted by separate order.

Done the 25th day of May, 2006.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE